Good morning, Your Honors. Craig Shagan, Harrisburg, Pennsylvania for Petitioner, Melina Dimova. This is a case under 237, INA 237A1EI, and it is a deportation case based on the smuggling statute. The facts in the case are not in dispute. Sorry, Your Honor, may I reserve ten minutes for rebuttal? Yes. The facts in the case are really not in dispute. The implication of the facts are, my client went up to Canada to assist a former neighbor drive back to North Carolina. When she went up, she had every reason to believe, and the court found and DHS found, that she believed that the Malayoffs, the family in Canada, had every right to return to the United States. As they were approaching the border, however, Mr. Malayoff announced that the family was getting out, at least he and his wife was, and that she was to pick them up on the other side of the border. She wanted no part of it, and told him so, and told him that she wouldn't do it. A fight ensued. The husband and wife got out, along with their three-year-old child, who happened to have been a U.S. citizen, and left into the woods near the Canadian border. Suppose when she went back, they were 50 feet from the border patrol officers who were chasing them, and she pulled up, opened the car door, they hopped in, and she took off. Isn't that aiding in entering into the U.S.? So your hypothetical assumes that they were actually trying to flee from a chasing border patrol agent? Yes. Well, it's certainly eluding, and that would be a crime. Is it helping them enter? I would say no, and let me just say as we go over these cases, because I've recycled hypotheticals and facts in my mind many times, that when you compare just generally these smuggling statutes, you tend to look at the evidence in one case to the other. But the heart of these cases is not a comparison of evidence. The heart of the case is the substance of the violation. And the question is, I believe in this case, I believe the question is, whether knowingly picking somebody up who has entered illegally and transporting them within the United States, not having offered any, you know, proposed assistance before they entered, is that a smuggling violation? Not is it another kind of violation, but is it a smuggling violation? Did you help them enter? And I do not see it in this case, because they had no reason to believe my client was going to return to help them, and the only reason she did was not to help them, but out of an understandable fear that, you know, the child was left out there with them, it was late, you know, 3 o'clock in the morning in the wee hours, she returns. Another way to look at the situation is, suppose instead of her having those thoughts, suppose they called her up and said, you know, our child is bleeding, come back and help us. We're in the United States now. We're 15 miles in. Help us. This is not what's involved here. As I read this, maybe I'm reading it wrong, but the findings of the lower immigration court is that the mere transportation of someone who is illegally in the country and they know they're illegally in the country is a violation of the law. Now, there is no question that your client knew that they were illegally in the country. Correct. And there's no question that they transported. He transported them, I should say. She went back. It's not clear, by the way, in the record what was going to happen next. I read the transcript again. It's immaterial. He transported them. Is there any issue on that? I mean, he picked them up and drove them even if he drove them five yards. He still transported them. My problem with this case is that I'm surprised you're not arguing it. There seems to be some inconsistency with some of the findings of the court below, which believed the version that was being made by your client, which, frankly, I would have found somewhat difficult to believe, but that's not my problem anymore because he was transporting. That's my problem with this case. Let me respond to two of those things because I think both of those issues that you've raised are important. One, these are unusual facts, but nobody had trouble believing her. Once it was presented to the court, they believed her, and not just the judge, but DHS essentially did too. They said when she returned, that was the violation. The problem that I have with that is IM, matter of IM, says that mere transportation is not assisting to enter. It is not a violation of the predecessor statute, which was the smuggling statute then. The only difference really being compensation. There was no compensation here, but that doesn't matter either. The other fact that I would have no trouble conceding, if she agreed to help them beforehand, we'd have a problem. She did not agree to do that. She did the opposite, so they had no expectation. When they went through that woods into the United States, they were doing their own restless act of their own invention without any assistance from her, except when they duped her to drive them toward the border. Nobody can blame her for that. Even DHS did not say that was a problem. So what is her culpable act as far as smuggling is concerned? They were already here. They were in the United States 15 miles from the border. But isn't aiding someone that's illegally, knowing that they're in the country illegally a violation of the law we're talking about? No, I don't think it is. I think mere transportation, if I know, I drive people I know are unlawfully present in the United States at least one or two times a week, and I'm representing them, I'm helping them. I mean, what you're talking about is entry into the United States. They entered. Now, eluding would be a crime, bringing to would be a crime. Nobody ever charged her with that. Isn't transporting someone who you know is here illegally aiding and abetting? No. It isn't? I don't think so. How is it aiding and abetting? If I drive a client from Harrisburg to Philadelphia, who I know is unlawfully present. You're aiding them to get to Philadelphia? Yeah, get them to court. Pardon me? To get them to court. I drive them. I'm driving them. That's certainly not a crime. In any event, your client hasn't been charged with aiding and eluding. Correct. And I think she would have good defenses, too. This is an aiding to enter. Yeah, and she did not. That's the whole point. She didn't promise them anything. She didn't induce them. She didn't encourage them. She didn't bring them across. She came back for the sake of because she was worried that they were left out in the woods, basically. The question is, does the entry stop at the point that they actually cross the border, or is there ongoing entry at the point when they were picked up? That's a very good question. And the way I would resolve that quite simply, and then I'll concede my time to my colleague, the way I would resolve that is we have to draw a line someplace. And if it's not clear, where is it? Is it 15 miles in, 100 miles in, 200 miles in? At some point, you have to say to enter means to enter. When I say, you know, take your shoes off before you enter the house, I mean when you enter the house. I don't mean, you know, when you're in your bedroom. You know, if I was talking to my kids, enter has very specific meaning. And, you know, she did not help them enter. She did not want them to enter. She wanted no part of it. And so here she's, I mean, it's sort of like they built the net to catch the tuna. They caught a dolphin. She's not part of what a smuggling operation should be. I mean, she was not intending to bring them in. She did not bring them in. She did not encourage them to come in. All she did was after they were in, go back to them. And that, I do not believe, is a deportable violation without a waiver, meaning permanent banishment from the United States. It's a significant disability. Thank you. I'll reserve for a moment. Mr. Cohen. Good morning, Your Honors. May it please the Court, Edith D. Cohen on behalf of the Respondent Attorney General. Substantial record evidence in this case supports the agency's determination that Ms. DeMova is removable under Section 237A1EI of the Immigration and Nationality Act. It's true that the facts of this case are not in dispute, but it's worth mentioning a couple of them. On the evening of June 25, 2007, Ms. DeMova dropped off her friends at Chemin-Pérur, Quebec, knowing that they intended to cross the border unlawfully. The record further indicates that approximately six or seven hours later, she was spotted at Wallace Pond, Vermont, approximately 100 yards from the United States border. She was then intercepted about 15 miles from the United States border. The record thus indicates that Ms. DeMova was engaged in conduct that involved an affirmative act of assistance that was both spatially and temporally close to the physical border crossing. Let me ask you about that. If the border agents had got there first, would they be able to prosecute them for a completed offense of entering the United States unlawfully? I think they would. The case was, in fact, referred to the U.S. Attorney's Office, but they declined to prosecute as a matter of discretion because the family had a young child. But that's not my question. My question is, hadn't they completed the offense of entering the United States? They could have been charged and convicted of entering the United States illegally before she got there. That's correct. So if they had already completed the offense of entering the United States unlawfully before she got there, then it seems to me when she gets there, by definition, you're telling me it's a post-entry event that is now going to take place. For the purpose of alien smuggling, the term enter is a term of art and one which the Court should defer to the Board's interpretation of. Let me ask about that. The Board has, in fact, provided a definition. In a matter of Martina Serrano, it explained that incidents which occur before, during, or after a border crossing may be involved in the entry so long as those acts are in furtherance of and may be considered a part of the act of securing and accomplishing the entry. And this definition is consistent with the Board's case law since 1957. And it's important to note here that Manner of I.M. and Parra-Rojas, the Board and Third Circuit decisions, required the Board and Third Circuit to consider the outer extremes of the definition of alien smuggling. In those cases, there was assistance to an individual who the alien who was assisting did not know prior to the entry. And the assistance came days after the physical border crossing. In those two cases, the Board and the Third Circuit agreed that it wasn't alien smuggling. But we don't have an extreme situation like that here where Mr. Mova's assistance came a mere hundred meters or so from the border, a mere number of hours from the entry, not days. And there is a nexus between their entry and her affirmative assistance.  So there was some participation. Whether or not there was a prearrangement is unnecessary to the determination. Well, let me ask you about that. So let's assume there's no prearrangement. In other words, they get over, they're there, they stick out their thumb, a car pulls over, a cab pulls over, something like that. They get in and they say, we just entered the United States illegally and our baby needs to go to a hospital, could you drive us there? Is that an offense? For a cab driver to have collected them? Or just the motorist traveling along who picks them up. They're already in the United States. They're a couple miles in. No one's chasing them. And they want a ride. And if the person, what I hear you saying is if the person knows that they entered the United States illegally, you can't give them a ride. In an exigent circumstance like that, although it probably would be a deportable offense, that would be a good candidate for prosecutorial discretion. When they got down to Miami and they asked for a ride to Key West. And here's what matter of IM and Paro Rojas stand for, that there is a point at which the entry ends. So if the alien had entered days before, if there was no nexus or connection to the alien prior to the entry, there is a point at which one can say, the entry has ended and prosecution would be the only way to punish this type of offense. What is that line? The line is certainly not one which the court has to really address in this case because Mr. Mova assisted so close to the border and so close in time. And I would note as well that although the record indicates that there was no assurance to the Mihaylovs that Mr. Mova would assist them, they still decided to wait approximately seven hours for her to return. Mr. Mihaylov testified in immigration court and yet he provided no evidence as to what the plan B might have been. But you want to keep pushing us back on the factual finding that we all found remarkable, but the factual finding is she had no intention or agreement to go back and get them. We are stuck. You're stuck with that factual finding, are you? By your own client? That there was no... In other words, the deal was never made on the other side of the border. And the government's position is that it doesn't matter whether there was a prearrangement because she knowingly assisted them to complete the entry. So it's just like the person, she's no different on these facts than the person who pulled over in the road to them hitching a ride, as long as they found out that they had just come into the country illegally. If it's knowing assistance and there's a nexus which is strong enough to the entry and there would be a fact-specific determination which would have to be made based on all of the circumstances in that case, it could be a removable offense if the circumstances provided that there was a sufficient nexus to the entry such that it was in furtherance and part of the entry. I would note additionally that the Board of Immigration Appeals, in dismissing the direct appeal of Ms. DeMova's removal order, did cite matter of Burbano. And in doing so, a matter of Burbano stands for the proposition that the board is upholding the determination and conclusions of the immigration judge. It's true that the board did reach some ancillary determinations afterwards in addressing the arguments raised on appeal. But we have this citation in the matter of Burbano. The board is saying we are adopting and affirming the immigration judge's decision. The immigration judge's decision is enough in and of itself. The board says those findings, those conclusions are enough to find removability, and that's all that's really necessary for the determination in this case. It seemed to me that the facts in the Second Circuit were even better for you than they are here because it looks like the person really kind of knew they were helping on the tail end of a smuggling operation, and yet the Second Circuit rejected the position you're asking us to adopt. Are you referring to the Chambers case? Which Second Circuit case are you referring to? I'm referring to the case we asked for supplemental briefing. The Parra-Rojas case in the Third Circuit? Third Circuit, yes. Could you repeat the question, Your Honor? To rule in favor of you here, don't we necessarily need to create a circuit split because it seemed to me the facts there were actually even better for you than they are here? There's no necessity to create a circuit split because in Parra-Rojas, the court wasn't called upon to consider facts similar to those presented in this case. They were better for you. In Parra-Rojas, the court concluded that mere transportation of an individual that the alien did not know prior to the entry and days after the entry does not amount to alien smuggling, and that's consistent with the Board's decision in matter of IAM. Let me pause. In that case, when the person gave the ride, they knew the person had just entered the country illegally. So how is that different than what we have here? Parra-Rojas is absolutely distinguishable because of the time that had elapsed between the entry, physical border crossing, and the assistance. Therefore, the Third Circuit, and they did explain in Parra-Rojas, the Third Circuit did indicate that an alien need not be present at the physical border crossing in order to be removable for alien smuggling and suggested that there could be circumstances, for example, where assistance is provided prior to the entry or money is provided in support of the entry. So you're distinguishing that case from this based on time. That's correct. And where is the timeline? Where do we draw that timeline? How many hours? There's no need to create a bright line rule because in this case. How about any rule? The general guiding principle of the Board, which is in matter of Martinez-Serrano, is that if those incidents occur before, during, or after the entry, so long as they're in furtherance of and can be considered part of the act of securing the entry. And here, where she was spotted 100 meters from the border, 100 meters, this is almost literally the physical border crossing. Yes, she was stopped 15 miles into the country, but she was spotted 100 meters into the country. And so this is not a close call. This just isn't a close case. We would have a different circumstance if Ms. DeMova got a call from her friends once they had reached Baltimore, and they had asked her to drive them from Baltimore to North Carolina. In such a situation, we could say the entry had long since been completed and she was merely transporting aliens, something which the Board in matter of IM, the Third Circuit, and Parker Rojas have agreed. That's not a removable offense under the INA. It can be punished under the criminal statute, which is part of the INA 274, but it's not a removable offense. And in this case, we don't have such a circumstance. It seems like you're giving us two factors, distance from the border and duration since the initial entry. And yet I'm having trouble understanding where on either one of those factors what criteria you're advancing for us to have some sort of predictable, knowable dividing line as to how far from the border and how much time has passed. If the court asks, was this act in furtherance of and can it be considered a part of the act of securing and accomplishing the entry, and the answer is yes, then it meets the Board's definition and satisfies the test which has been set out by the Board generally and which is consistent with both border case law and the circuit precedent. And in this case, these acts of Ms. DeMovo were in furtherance of securing and accomplishing the entry. But then it would seem we need to ask, well, what would have happened if she hadn't done it? If she had not come back. If she had merely driven them from the Montreal airport to the border with the United States, then learned that they planned to enter unlawfully and made her way down to North Carolina without – No, no, I mean we have to ask what would have happened to them if she hadn't gone back. It seems to me your position is that if she hadn't gone back, they would have been apprehended and therefore their entry would not have been fully accomplished. We don't know, but we do know that the Border Patrol was aware of her entry because she was stopped at 1145 the evening before. They were on the lookout for her. And the area where the menial logs entered was an area known for alien smuggling. So there is a significant chance that they would be caught. We know they were looking for her, but we certainly can't tell what would have happened had she not returned. And if your honors have no further questions, I'll submit. Thank you so much for your time. Thank you. Mr. Shagan. Yeah, I just have a couple of very quick points. A very significant difference between this case and Soriano and Para Rojas is that this is a deportation case, not an inadmissibility case. And the significance of that is the burden is on the government, not on us to prove the grounds for removal, as opposed to an inadmissibility where it would be our burden to prove that we were able to come into the United States. The plan B is a very excellent question. I kind of kicked myself for not having developed that more at the hearing below, but the reality is it was the government's burden to show what plan B was, and they never did. I don't think it's in the record, at least as of my memory, what the operations were behind the scene. When I read the transcript, I don't recall that. But even assuming that to be the case, the reality of all that we're talking about, the timeline, did you know the parties before they entered, it's all about going to the inference that you were involved in bringing them in. It's not about, like suppose you were driving in Canada and you had somebody you knew in the car and you accidentally ended up in America. Well, is that a knowing smuggling operation? I would say no. I mean, there has to be both a mens rea and an actus reus. So their position is that, once again, it's in furtherance of securing. Yeah. How did she not further their securance of entry? Well, they had already entered, and securing the entry really means avoiding being detected, and that could be a crime, and they could have charged her with that. She might have had defenses for it. I believe she did. And we really don't know what her intention was either after they were picked up. I mean, we're presuming that she was taking them back to North Carolina. But, I mean, I don't know if that was fully developed in the record. But the one thing I will say that I would disagree with my colleague on strenuously is that clarity is extremely important, a clarity of what the rules are and what it is you're looking for. Because I think what happened in this case more than anything else was they looked at the evidence and they failed to see through the evidence to the substance of what was going on. And they, you know, close in time, knew them beforehand. That's only relevant as it goes to the substance of the entry. That's why it's relevant, because you could presume or infer from that that maybe she was involved when, in fact, they came to the conclusion that she was not. Thank you very much for your time. I greatly appreciate it.